# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KATHLEEN A. RAMSEY** and **ALBERT A. BRUNN**, ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | 2:10cv1305 **Electronic Filing** |
| **CITY OF PITTSBURGH, Pennsylvania**, ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

February 9, 2011

**I.　INTRODUCTION**

Plaintiffs, Kathleen A. Ramsey and Albert A. Brunn ("Plaintiffs"), are pro-life advocates who seek to distribute pro-life literature on public and private property in the City of Pittsburgh. Plaintiffs contend that Pittsburgh Ordinance § 601.62 ("§ 601.62") unconstitutionally restricts such distribution, and therefore, filed a complaint seeking a temporary restraining order ("TRO") and preliminary injunction pursuant to Rule 65 enjoining the City of Pittsburgh (the "City") from enforcing § 601.62 against them and others, in order to allow them to distribute literature without fear of being subject to the penalties associated with the ordinance.

The Court held a hearing on the motion for a TRO, and determined that Plaintiffs had (1) a reasonable probability of success on the merits; (2) that they would be irreparably harmed by denial of the relief as their First Amendment rights of free speech will be restricted; (3) the relief will not harm the City of Pittsburgh; and (4) such relief will be in the public interest. The Court granted the TRO enjoining the Defendant, its officers, agents, attorneys, employees, successors in office, police, prosecutors, and those acting in concert with them, from enforcing Pittsburgh

1

Ordinance § 601.02.

The Court held an evidentiary hearing on the motion for preliminary injunction on November 16, 2010, and gave the parties an opportunity to file supplementary briefs in support of their respective positions. Based on the testimony at the hearing and for the reasons set forth below, the Court will grant Plaintiffs' motion for a preliminary injunction.

**II.    DISCUSSION**

In assessing whether a preliminary injunction should be granted, four considerations must be taken into account:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*ACLU v. Reno*, 217 F.3d 162, 172 (3d Cir. 2000) (quoting *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). Issuing a preliminary injunction is an "extraordinary remedy and should be restricted to limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989). A district court should endeavor to balance these four factors to determine whether an injunction should issue. *BP Chemical Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000). All four factors must weigh in favor of granting the preliminary injunction. *See Pappan Enter., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 803 (3d Cir. 1998).

As a general matter, a court "will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently with the Constitution." A facial challenge will succeed only if the statute in question "is unconstitutional in every conceivable application, or . . . it seeks to prohibit such a broad range of protected conduct that it is constitutionally 'overbroad.'" *Hohe v. Casey*, 956 F.2d 399, 404 (3d Cir. 1992)(quoting *Robinson v. New Jersey*, 806 F.2d 442, 446 (3d Cir. 1986)); *see also Members of*

*the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984).

The statute at issue in this instance, Pittsburgh Ordinance § 601.62, states as follows:

> § 601.62  <u>Distributing Handbills, Samples, and Other Materials</u>
>
> (a)     No person shall intentionally, recklessly or negligently distribute any handbill, advertisement, flyer, announcement or any sample merchandise on public and private property so as to cause litter or unreasonable interfere with pedestrian traffic.
>
> (b)     No person shall distribute any unsolicited handbill, newspaper, advertisement, flyer, announcement or sample merchandise on private property, including walkways and lawns, so as to cause litter.  Unsolicited materials must be securely deposited on porches and stoops.
>
> (c)     No person shall deposit in, fasten to, or place on or cause to be placed on any motor vehicle parked or standing upon or along any public street or public parking lot within the City, any unsolicited handbills, advertisements, cards, leaflets, signs, posters, or notices without obtaining prior consent from the owner of the vehicle.
>
>> (1)     Nothing contained in this subsection [c] shall prohibit the attachment to a motor vehicle of a citation issued or published by or on behalf of the City or any other material authorized by law to be placed on a motor vehicle by an authorized official.
>>
>> (2)     The provisions of this subsection [c] shall not be deemed to prohibit the distribution of any handbill, advertisement, card, leaflet, sign, poster, or notice by hand-delivery to the owner or other occupant of any vehicle who is willing to accept the handbill, advertisement, card, leaflet, sign, poster, or notice.

The burden is on the City to demonstrate the constitutionality of its actions. *Startzell v. City of Phila.*, 533 F.3d 183, 201 (3d Cir. 2008): *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 658 (1981) (Brennan, J., concurring in part and dissenting in part) ("As our cases have long noted, once a governmental regulation is shown to impinge upon basic First

3

Amendment rights, the burden falls on the government to show the validity of its asserted interest and the absence of less intrusive alternatives.").

Federal courts have determined that governments may enact reasonable restrictions on handbilling that are also consistent with the First Amendment. Specifically, so long as the restrictions are "content neutral," governments may regulate the time, place, and manner of the activity. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Startzell v. City of Philadelphia*, 533 F.3d 183, 193 (3d Cir. 2008). The parties agree that the ordinance is content-neutral, so the first prong of the traditional "time, place, and manner" inquiry is not at issue in this case. Therefore, to justify restricting constitutionally-protected speech under a time, place, and manner analysis, the City must demonstrate that such restrictions (1) serve a substantial government interest; (2) are narrowly tailored to advance that interest; and (3) leave open ample alternative channels of communication to allow the individual other ways to convey his or her message. See *Ward v. Rock Against Racism*, 491 U.S. 781, 791(1989).

A. <u>Narrowly Tailored to Advance a Substantial Government Interest</u>

The City's stated interests in enacting § 601.62 are to: "(1) reduce litter and visual blight; and (2) to protect the rights of individuals to have their private property left alone from those without permission to use them for displaying informational materials." *See* City's Brief in Opposition p. 8.

Supreme Court decisions, however, suggest that preventing littering is simply not a sufficiently significant interest to preclude leafletting. *See Schneider v. New Jersey*, 308 U.S. 147, 163-64 (1939) ("[T]he public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution."); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943)

4

("[The right to distribute literature] may not be withdrawn even if it creates the minor nuisance for a community of cleaning litter from its streets."). Moreover, the Supreme Court has repeatedly emphasized, "merely invoking interests . . . is insufficient. The government must also show that the proposed communicative activity endangers those interests" *See e.g. Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 73, 75 (1981)(rejecting city's asserted zoning interests because it "presented no evidence"); *S.O.C. v. County of Clark*, 152 F.3d 1136, 1146 (9th Cir. 1998)("[N]o evidence exists in the present record . . . to support an assumption that commercial handbillers are the inherent cause of Clark County's pedestrian flow problems."); *Berger v. City of Seattle*, 569 F.3d 1029, 1049 (9th Cir. 2009) ("A governmental body seeking to sustain a restriction must demonstrate that the harms it recites are real."). Assuming, the prevention of litter is a significant government interest, the City must demonstrate that vehicle or hand leafletting creates an abundance of litter such that the interference with free speech is justified.

The testimony at the TRO and preliminary injunction hearings certainly indicates that the City has a problem with litter. The evidence also indicates that the majority of the litter is made up of items other than leaflets, handbills or advertisements; the litter consisting of pizza boxes, coffee cups, soda cans and bottles, various food and candy wrappers, etc. TRO Transcript ("TRO Tr.") pp. 6, 33 & 41; Preliminary Injunction Transcript ("P.I. Tr.") pp. 10, 12, 15, 21-23. The majority of the testimony focused on the South Side corridor of the City, and a street cleaner employed by the South Side Local Development Company specifically testified that seventy (70 %) per cent of the litter in the South Side was made up of items such as coffee cups, newspapers, pizza boxes and food wrappers. P.I. Tr. P. 12.

In satisfying its burden of showing that there is evidence supporting the City's proffered justification of its restriction on speech, the City need not produce "a panoply of empirical

5

studies, police records, [or] purported injuries . . . less evidence might be sufficient." *Horina v. City of Granite City*, 538 F.3d 624, 633 (7th Cir. 2008)(citing *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 829 (7th Cir. 1999)( ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.")). The evidence in the instant action, however, does not convince this Court that handbilling or leafletting caused litter in the City to such an extent as to necessitate, or justify, § 601.62's First Amendment restriction. Moreover, the Court finds little justification for such a broad governmental restriction on leafleting to combat litter when the City already has an ordinance that proscribes littering.

The City also asserts an interest in protecting the private property rights of individuals. This Court finds this interest insufficient to justify § 601.62's restriction on free speech. In *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009), the Court of Appeals for the Ninth Circuit commented on the government's interest in private property rights as follows:

> The assertion of an interest in protecting the rights of car owners
> runs counter to the general rule that the "right to distribute
> literature . . . necessarily protects the right to receive it." When an
> ordinance "does not control anything but the distribution of
> literature," the government cannot "submit[ ] the distributer to
> criminal punishment for annoying the person on whom he calls,
> even though the recipient of the literature distributed is in fact glad
> to receive it. (Citations omitted)

*Klein v. City of San Clemente*, 584 F.3d 1196, 1204 (9th Cir. Cal. 2009)(quoting *Martin v. City of Struthers*, 319 U.S. at 143-144). Moreover, the Supreme Court has rejected attempts similar to those of the City's in this instance to restrict protected speech. In *Martin v. City of Struthers*, the Court found unconstitutional a city ordinance prohibiting the distribution of handbills and circulars at private residences. *Martin v. City of Struthers*, 319 U.S. at 142. In *Bolger v. Youngs*

6

*Drug Prods. Corp.*, 463 U.S. 60 (1983), the Court held that a federal law which prevented the unsolicited mailing of information concerning contraceptives, was unconstitutional under the First Amendment right to free speech even though the speech in question was commercial speech which is afforded "less protection . . . [than] other constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. at 64-65.

Because the Supreme Court has held that the protection of private property was not a sufficiently substantial government interest to justify a ban on door-to-door solicitation at private homes, the protection of private property interests cannot justify the City's ban on placing leaflets on the windshields of vehicles parked on public streets.

Notwithstanding the Court's finding that the City failed to proffer sufficient evidence establishing that § 601.62 serves a substantial government interest, the Court shall determine whether the Ordinance is narrowly tailored to advance the alleged government interests. A statute is narrowly tailored to serve a substantial government interest "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock against Racism*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Further, to satisfy the "narrowly tailored" aspect of this test, the restriction "need not be the least restrictive or least intrusive means of [serving the government's interest]," but it also may not "burden substantially more speech than is necessary to further" that interest. *Ward v. Rock Against Racism*, 491 U.S. at 798-799. *See also Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ("A complete ban can be narrowly tailored but only if each activity within the proscription's scope is an appropriately targeted evil").

As mentioned above, the City already has an ordinance that proscribes littering, therefore the City should be able to effectively control its littering problem without broad restrictions on

7

handbilling. See e.g. *Schneider v. New Jersey*, 308 U.S. at 162-163 ("There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets. . . . [T]he public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution."). Further, the testimony at the hearings indicated that the leaflet litter problem occurred in specific areas of the City, primarily on weekends during the late evening and early morning hours, and the leaflets were primarily commercial in nature. *See e.g.* TRO Tr. pp. 6, 7, 10, 12, 13, 15, 16, 19, 20, 33, 35, 41 & 46-48; P.I. Tr. pp. 5, 6, 9, 10, 13, 20, 23, 32 & 33. The City's broad restriction, then, substantially burdens more speech than necessary to further its interest in stemming the stated litter problem.

The City has failed, therefore, to demonstrate that its restriction on constitutionally-protected speech either serves a substantial government interest or is narrowly tailored to advance that interest. There is no need to analyze the third element under a time, place, and manner analysis, and the Court finds that § 601.62 is inconsistent with the First Amendment to the United States Constitution.

    B.   Preliminary Injunction

Plaintiffs have demonstrated a likelihood of success on the merits on their claim that Pittsburgh Ordinance § 601.62 unconstitutionally restricts the distribution of pro-life literature on public and private property in the City of Pittsburgh. Plaintiffs must also demonstrate that they will likely suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in their favor. *See ACLU v. Reno*, 217 F.3d at 172.

It is well established that when First Amendment interests are either threatened, or in fact being impaired at the time relief is sought, the loss of First Amendment freedoms, for even a

minimal period of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Swartzwelder v. McNeilly*, 297 F.3d 228, 241 (3d Cir. 2002). The Court finds that the Plaintiffs in this instance will be irreparably harmed by enforcement of § 601.62.

The Court of Appeals for the Third Circuit has determined that "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *AT & T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Moreover, many courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles. *See Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *Iowa Right to Life Comm'e, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (finding a district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms"); *Suster v. Marshall*, 149 F.3d 523, 530 (6th Cir. 1998) (holding candidates for judicial office were entitled to preliminary injunction of expenditure limit given likelihood of success on the merits, irreparable harm and lack of public interest in enforcing a law that curtailed political speech); *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) (stating, in context of a request for injunctive relief, that "the public interest …favors plaintiffs' assertion of their First Amendment rights"); *G&V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (noting "it is always in the public interest to prevent the violation of a party's constitutional rights"); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (holding the

"strong public interest in protecting First Amendment values" favored preliminary injunctive relief). The Court finds that the public interest in the free exchange of ideas far outweighs any harm to the City in enjoining the enforcement of § 601.62.

### III. CONCLUSION

Based on the foregoing, the Court finds that the Plaintiffs have demonstrated: (1) a likelihood of success on the merits on their claim that Pittsburgh Ordinance § 601.62 unconstitutionally restricts the distribution of pro-life literature on public and private property in the City of Pittsburgh; (2) that they will be irreparably harmed by enforcement of § 601.62 as their First Amendment rights of free speech will be restricted; (3) the relief will not harm the City of Pittsburgh; and (4) a significant public interest in upholding First Amendment principles. The Court will, therefore, grant the Plaintiffs' motion for a preliminary injunction and enjoin the Defendant, its officers, agents, attorneys, employees, successors in office, police, prosecutors, and those acting in concert with them from enforcing Pittsburgh Ordinance § 601.02. An appropriate Order follows.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Edward L. White, Esquire
Noah Paul Fardo, Esquire
Edward L. White, III, Esquire
Geoffrey R. Surtees, Esquire
Daniel D. Regan, Esquire
Michael E. Kennedy, Esquire

(*Via CM/ECF Electronic Mail*)